UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BETTY JONES                                                                                          PLAINTIFF

VERSUS                                                              CIVIL ACTION NO. 1:16CV271-RHW

CAROLYN W. COLVIN
Acting Commissioner of Social Security                                                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Betty Jones filed a complaint pursuant to 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security (Commissioner) denying her application for Social Security Disability benefits. Doc. [1]. The parties have filed memoranda in support of their respective positions. Doc. [13] & [14]. Jones filed her application for disability benefits alleging disability beginning August 29, 2013, resulting from osteoarthritis, asthma, high blood pressure, depression, herniated disc, pinched nerve, acid reflux, and back fusion. Doc. [10] at 104-06, 120. Jones was 54 years old at the alleged onset of disability, with an 8th grade education, and past relevant work as a snack bar attendant and snack bar manager. *Id.* at 55, 145-48.

Jones' application was denied initially and on reconsideration. *Id.* at 58-72. She requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 29-57. The ALJ found that Jones had severe impairments of obesity, sciatica, and lumbar degenerative disc disease with stenosis. *Id.* at 16. The ALJ further found that Jones retained the residual functional capacity (RFC) to perform the full range of light work. *Id.* at 17. The ALJ concluded that Jones was capable of performing past relevant work as a snack bar attendant; therefore, she was not disabled. *Id.* at 22. The Appeals Council denied Jones' request for review. *Id.* at 5-8. Having exhausted her administrative proceedings, Jones filed the instant lawsuit. Jones now

argues that (1) the ALJ failed to properly evaluate the credibility of her subjective complaints; and (2) the ALJ's RFC finding is not supported by substantial evidence.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment.

42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

### Credibility Determination

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints and credibility. Specifically, Plaintiff contends that she presented significant evidence of a medically determinable impairment capable of producing disabling pain. She further asserts that the ALJ selectively viewed the evidence or failed to recognize Jones' reported limitations. Finally, Jones argues that the ALJ improperly discredited the function report submitted by her husband.

While the ALJ must consider a claimant's subjective complaints, she is allowed to examine the objective medical evidence to test claimant's credibility. *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). Subjective evidence of symptoms will not take precedence over

3

conflicting medical evidence. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). A claimant's subjective complaints may be discounted by an ALJ if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Moreover, judgment as to the credibility of testimony is the sole province of the ALJ. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The Fifth Circuit has held that the ALJ's credibility determination is entitled to considerable deference. *See Falco v. Sullivan*, 27 F.3d 160, 164 (5th Cir. 1994).

The ALJ concluded that Jones' sciatica and lumbar degenerative disc disease could reasonably be expected to cause some limitations, but she found that Jones' allegations of symptoms and limitations were not consistent with the objective medical evidence or her functional ability. Doc. [10] at 20. The ALJ cited to numerous instances where the record contradicted Jones' allegations of disabling pain. For example, the ALJ noted that in a Function Report she indicated that she was able to do dusting, wash dishes, and loads of laundry. *Id.* at 19. In a medical record dated June 14, 2013, she reported to Dr. Terry Smith that on the previous day she had mowed the yard for about one hour on a riding mower. *Id.* The ALJ also relied on a medical report from July 1, 2013, indicating that Jones reported no complaints and that she had improved since her last visit. *Id.* Her records also showed that she spent at least 20 minutes, five times a week, walking. *Id.* On January 2, 2013, she reported no complaints. *Id.* On April 2, 2013, she reported doing much better since her back surgery, had no current complaints, and was feeling good. *Id.* A medical report from Dr. Shawn Mei dated August 9, 2013, showed on examination no pain in muscles or joints, no limitation of range of motion and no paresthesia or numbness. *Id.* at 20. As of July 14, 2013, Jones reported she had stopped using a walker and cane. *Id.* at 21. At several office visits subsequent to her February 2013 back surgery Jones reported doing much better and feeling good. *Id.* Although Jones has pointed to

4

evidence that might support her allegations of disabling pain, these arguments go to the weight of the evidence. The ALJ weighed the conflicting evidence and relied on evidence, both from Jones and from the medical records, that contradicted her allegations of disabling pain. This Court will not re-weigh the evidence. Rather, the Court upholds the ALJ's decision regarding Jones' credibility, because it is supported by substantial evidence.

### **Residual Functional Capacity**

Jones argues that the ALJ erred in determining her RFC. According to Jones, the ALJ relied on his own reading of the medical records and failed to obtain a medical assessment addressing Jones' physical capabilities and mental functioning. Although not cited by Jones, she appears to argue that the ALJ failed to conduct a function-by-function analysis of her RFC. The Fifth Circuit held, in the context of Social Security Ruling 96-8p, that an ALJ must perform a function-by-function analysis of a claimant's capacity to perform sustained work-related physical and mental activities. *Myers v. Apfel*, 238 F.3d 617, 620-22 (5th Cir. 2001). The Fifth Circuit explained that the ALJ should take into consideration the medical evidence from all of the claimant's treating doctors and present good cause why any such evidence is rejected. *Id.* at 621.

Subsequent to *Myers*, the Fifth Circuit clarified that an RFC based in part on a state examiner's function-by-function analysis of a claimant's limitations satisfies the legal standard set forth in *Myers* and SSR 96-8p. *See Onishea v. Barnhart*, 116 Fed. App'x 1, 2 (5th Cir. 2004) (unpublished). In another opinion, where claimant argued that the Commissioner failed to conduct a function-by-function analysis, the Fifth Circuit held that "[a]lthough the Commissioner did not consider each function of [claimant's] past work, there was no conflicting evidence and substantial evidence supported the Commissioner's finding." *Williams v. Barnhart*, 70 Fed. App'x 183, 184 (5th Cir. 2003) (unpublished). Then later in *Porter v. Barnhart*, the Fifth Circuit

concluded that the ALJ complied with SSR 96-8p, and the function-by-function analysis, by considering all of the medical evidence and claimant's subjective complaints of pain. 200 Fed. App'x 317, 319 (5th Cir. 2006) (unpublished).

In the instant case, the ALJ considered all of the medical evidence and Jones' subjective complaints of pain and concluded that that Jones is capable of light duty work. Doc. [10] at 17. The exertional limitations of light work are defined as an individual who could lift and/or carry 20 pounds occasionally and less than 10 pounds frequently, sit for six hours during an eight-hour work day, and stand and/or walk for six hours during an eight-hour work day. 20 C.F.R. § 416.967(b). The ALJ recited these limitations in her discussion of Jones' exertional limitations. Doc. [10] at 21. The ALJ determined that the objective and clinical evidence did not support limitations to the degree alleged by Jones. *Id.* at 19. The ALJ gave a detailed account of the medical evidence and concluded that the record did not support a finding of "significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities that are associated with intense and disabling pain." *Id.* at 21.

The medical records of Jones' treating physicians, Dr. Smith and Dr. Mei, support the ALJ's conclusion. In a disability assessment dated August 25, 2013, Dr. Smith opined that Jones "has the ability to work at light medium duty". Doc. [10] at 211. Dr. Smith's records from July 19, 2013, indicate that Jones displayed no muscle wasting, no joint pain or stiffness, "normal strength" and "no difficulties in walking". *Id.* at 214. On August 9, 2013, Dr. Mei also reported no pain in Jones' muscles or joints, no limitation of range of motion, no paresthesia or numbness, and no weakness. *Id.* at 237. In that same report, he measured Jones' upper extremity strength at 5/5 and lower extremity strength at 4.5/5. *Id.* Jones does not point to any medical opinion evidence from any source finding that she has greater exertional limitations.

6

The ALJ also relied extensively on Jones' own description of her limitations in assigning her RFC. Doc. [10] at 19-21. In her Function Report, Jones reported that she was able to do dusting, wash dishes, and loads of laundry. *Id.* at 19. On June 14, 2013, she reported to Dr. Smith she was able to mow the yard for about one hour on a riding mower. *Id.* On July 1, 2013, Jones reported that she walks at least 20 minutes five times per week. *Id.* Based on the foregoing, the Court finds that the ALJ's assignment of exertional limitations is supported by substantial evidence.

With respect to mental limitations, the ALJ considered the opinions of Amy Hudson, Ph.D, an agency psychological consultant, and Karen Hulett, M.D., an agency medical consultant. Doc. [10] at 17. The only two mental health professionals to opine on the subject have concluded that Jones did not have a severe mental impairment. Dr. Hudson opined that Jones' affective disorders were not severe. *Id.* at 59-65. Dr. Hulett affirmed this determination. *Id.* at 70-71. The ALJ assigned "great weight" to Dr. Hulett's opinion. *Id.* at 17. The ALJ further relied on Jones' own assessment to find that she did not suffer from a severe impairment related to mental functioning. *Id.* at 17. Specifically, Jones indicated that she can function independently and carry out daily activities, she has friends and visits with relatives. *Id.* Because Jones did not suffer a severe impairment related to her mental functioning, the ALJ did not include any mental limitations in the RFC assessment. Based on the foregoing, the Court finds that substantial evidence supports the ALJ's decision not to include mental functioning in the RFC with respect to Jones' depression.

Jones also argues that the ALJ failed to account for side effects of strong pain medication. She points to a report from July 19, 2013, where Jones reported to Dr. Smith that medications made her feel "sluggish". Doc. [10] at 213. On August 9, 2013, she complained to Dr. Mei that

7

Neurontin caused her to feel lethargic. *Id.* at 237. On September 13, 2013, Dr. Mei suspected that Jones' headaches might be related to medications. *Id.* at 305. In her decision, the ALJ stated that she considered the side effects of Jones' medications. *Id.* at 21. In her application for benefits, Plaintiff failed to indicate in the space provided that any of her medications caused side effects. *Id.* at 158. At the ALJ hearing, Jones did not mention any adverse side effects from her medication. Other than a couple of isolated remarks in the medical record that she felt sluggish or lethargic and had headaches, Jones' medical records and testimony do not mention side effects. Jones failed to allege in her application for disability or at the hearing before the ALJ that the side effects of her medications were disabling. Hence, there was no basis in the record for the ALJ to explore in more detail those side effects. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

Based on the foregoing, the Court finds that the decision of the Commissioner is AFFIRMED.

SO ORDERED AND ADJUDGED, this the 6th day of September, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE